IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PIETER JACOBS <br><br> Plaintiff, <br><br> v. <br><br> KPMG, LLP <br><br> Defendant. | CA No.: _____ <br><br><br> JURY DEMANDED |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Pieter Jacobs complains of Defendant KPMG, LLP and for cause of action would show the Court as follows:

### INTRODUCTION

1. Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2. Plaintiff files this action against Defendant for its race discrimination and retaliation violation under 42 U.S.C. § 1981 as well as Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et. Seq. ("Title VII").

**PARTIES**

3. Plaintiff Pieter Jacobs ("Jacobs" or "Plaintiff") is an individual who resides in Houston, Harris County, Texas.

4. Defendant KPMG, LLP ("KPMG" or "Defendant") is a foreign limited liability partnership authorized to do business in Texas employing more than fifteen (15) regular employees. Plaintiff worked for Defendant out of Harris County, Texas. Defendant can be served

through its registered agent C T Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201-3136.

## VENUE

5. Venue is appropriate in the United States District Court for the Southern District of Texas, Houston Division because the events or omissions giving rise to the matter in controversy occurred in this district and because Defendant has substantial contacts within this district. Venue is proper in this Court under 28 U.S.C. § 1391.

## JURISDICTION

6. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, under 28 U.S.C. §1331 and 42 U.S.C. § 1981.

7. The unlawful employment practices were committed within the jurisdiction of this Court.

## CONDITIONS PRECEDENT

8. No administrative exhaustion or other conditions precedents are required prior to the filing of claims under 42 U.S.C. § 1981. As for the claim for employment discrimination under Title VII, Plaintiff has exhausted his remedies and has received a Right to Sue letter from the United States Equal Employment Opportunity Commission on April 9, 2021.

## FACTS

9. Jacobs is of South African national origin and ethnicity. Defendant employed Jacobs as a Director in the Financial Due Diligence Advisory Practice. Jacobs was with Defendant for over twenty-one (21) years, but transferred to the Houston office of KPMG's worldwide consulting firm in 2015. He was employed with Defendant until his wrongful termination on or about August 27, 2020.

10. Jacobs consistently was thought of and performed above-standard.

11. Jacobs suffered adverse job action in the form of a four-month career transition that resulted effectively in the termination of his employment. The adverse job action was taken with regard to his country of origin, South Africa, and South African ethnicity. Jacobs immigrated from South Africa, along with his wife and children, to join the Houston office of KPMG.

12. When he first transferred to the USA, Jacobs had difficulty in adjusting to the way the US teams approached projects as it was very different than the way the firm operated in South Africa. Upon Jacobs' arrival, his previous performance manager (Mr. Tony Bohnert) provided very little in terms of support in adjusting, so he had to learn through trial and error. Mr. Bohnert issued a low performance memo on Jacobs, approximately four (4) – five (5) years ago.

13. A fellow South African (Maik Tiemann) also joined at the same time as Jacobs at the same level. Mr. Tiemann experienced the same treatment and received a low performance memo as well. He resigned shortly thereafter as he was not going to stand for the discriminatory behavior exhibited by KPMG to those of South African national origin and ethnicity. Jacobs was often compared to Mr. Tiemann in his performance reviews and felt that the comments made in the performance reviews were not applicable to him, but that an opinion was formed based on the fact that he was South African.

14. The support for the adverse job action mentioned above was materialized in an internal document known as a "Low Performer Memo" dated 10/25/2019. Jacobs reviewed the memo exhaustively and it is laden with material falsehoods.

15. Jacobs' direct supervisor was Mr. Brandon Beard ("Beard"). After receiving the memo referenced above, Jacobs and Beard met to discuss the content of the memo. Jacobs pointed

out false statements and provided context as to perceived low performance. Beard committed to address Jacobs' comments and re-issue the low performance memo. Beard failed to do so and used the low performance memo as the basis for the four- month career transition plan.

16. Beard made some erroneously conclusive remarks in support of the adverse job action, including a comment from a client of the firm on a particular contract (which will remain unnamed due to confidentiality). Beard claimed that the client on that project stated that he would never work with Jacobs again. Jacobs confronted a partner on that project who confirmed that the client Beard referred to never made that comment. –

17. Beard gave instructions to the FDD Energy partners and the resource planning team, prohibiting them from utilizing or planning for Jacobs to work on any engagement. In essence, with these actions, Beard "benched" Jacobs from participating in projects. Beard had nothing to justify this action, as the only thing that was fueling this "benching" action was a lie about a client not willing to work with Jacobs. Once Jacobs was no longer able to participate in projects, he was not able to sustain his productivity levels and therefore, was not able to meet his productivity and revenue targets. Beard purposely "benched" Jacobs so that he could issue a Low Performance Memo by stating that Jacobs was not meeting productivity and revenue targets.

18. Essentially during the performance improvement period initiated by the Low Performance Memo, Beard continued to disallow Jacobs from participating in projects and thus not allowing him to improve his productivity and revenue levels. Improvement in Jacobs' productivity and revenue targets were requisites of Jacobs maintaining his employment with KPMG, but because of Beard's directions to the team to not allow Jacobs to participate

in projects, Jacobs was locked into low productivity and low revenue levels and not able to improve as the performance improvement period required for job maintenance.

19. Thus, after his inability to improve productivity or revenue levels as a direct result of Beard's "benching" of Jacobs, Jacobs was terminated by KPMG. Beard directly caused this outcome by initiating those lies about a client not wanting to work with Jacobs and disallowing his participation on work projects and directing the team to not allow Jacobs to participate. Without participation in projects, Jacobs could not improve his productivity and revenue levels and was therefore, terminated as his performance improvement period had lapsed without any marked improvements.

20. Jacobs specifically asked Beard why he could not re-affiliate or transfer to another part of the firm and Beard admitted it was due to his culture.

21. When Jacobs asked why he didn't get a transfer to the Risk Management team, Jacobs was told that it was due to an incident while he was working on their team. Jacobs reached out to the director of the team who confirmed that there was no such incident and that he had no idea how Beard obtained that information.

22. Beard engaged in bullying due to Jacobs' country of origin and his desire to remain in the United States by threatening that he knows that Jacobs wants to raise his children in the United States by telling Jacobs that because of these reasons Jacobs will do exactly as he says.

## CAUSES OF ACTION

### I.
### *NATIONAL ORIGIN DISCRIMINATION 42 U.S.C. § 1981.*

23. Plaintiff hereby incorporates and realleges each and every paragraph of the facts.

24. Defendant has discriminated against Plaintiff in the terms and conditions of Plaintiff's employment because of Plaintiff's national origin. Plaintiff was subjected to discriminatory treatment that resulted in his unlawful termination on the basis of his national origin, in violation of 42 U.S.C. § 1981.

25. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and/or conducted in callous disregard of the rights of Plaintiff – entitling Plaintiff to punitive damages.

26. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to: lost employment opportunities, lost wages, lost back pay and front pay, lost benefits, and attorneys' fees and costs. Plaintiff is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from Defendant under 42 U.S.C. § 1981.

27. As a further result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer impairment to his name and reputation, humiliation, embarrassment, emotional distress, and mental anguish. Plaintiff is entitled to recover damages for such injuries form the Defendant under 42 U.S.C. § 1981.

## II.
### *NATIONAL ORIGIN DISCRIMINATION UNDER TITLE VII*

28. Plaintiff hereby incorporates and realleges each and every paragraph of the facts.

29. Defendant has discriminated against Plaintiff in the terms and conditions of Plaintiff's employment because of Plaintiff's national origin. Plaintiff was subjected to discriminatory treatment that resulted in his unlawful termination on the basis of his national origin, in violation of Title VII.

30. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and/or conducted in callous disregard of the rights of Plaintiff – entitling Plaintiff to punitive damages.

31. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to: lost employment opportunities, lost wages, lost back pay and front pay, lost benefits, and attorneys' fees and costs. Plaintiff is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from Defendant under Title VII.

32. As a further result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer impairment to his name and reputation, humiliation, embarrassment, emotional distress, and mental anguish. Plaintiff is entitled to recover damages for such injuries form the Defendant under Title VII.

## DAMAGES

33. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress.

## ATTORNEY'S FEES

34. Defendant's action and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff retaining the services of ROSENBERG & ASSOCIATES, 3518 Travis Street, Suite 200, Houston, Texas 77002 in initiating this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fees to Plaintiff would be equitable and just and therefore authorized by Section 37.009 of the Civil Practice and Remedies Code.

## **PRAYER**

WHEREFORE, Plaintiff requests that Defendant be cited to appear and answer herein, and then on final hearing, Plaintiff have judgment as follows:

a. Judgment against Defendant, for actual damages sustained by Plaintiff as alleged herein;

b. Judgment against Defendant, for back pay lost by Plaintiff as alleged herein;

c. Judgment against Defendant, for front pay by Plaintiff as alleged herein;

d. Grant Plaintiff general damages for the damage to Plaintiff's reputation;

e. Pre-judgment interest at the highest legal rate;

f. Post-judgment interest at the highest legal rate until paid;

g. Compensatory damages;

h. Attorney's fees;

i. All costs of court expended herein;

j. Such other and further relief, at law or in equity, general or special to which Plaintiff may show Plaintiff justly entitled.

Respectfully submitted,

*/s/ Gregg M. Rosenberg*
Gregg M. Rosenberg
Attorney-in-Charge for Plaintiff
USDC SD/TX No. 7325
Texas State Bar ID 17268750
Gregg@rosenberglaw.com
Nazanin Salehi
USDC SD/TX No. 3384749
Texas State Bar ID 24103913
Nazanin@rosenberglaw.com
ROSENBERG & ASSOCIATES
3518 Travis Street, Suite 200
Houston, Texas 77002
(713) 960-8300
(713) 621-6670 (Facsimile)
ATTORNEYS FOR PLAINTIFF